IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Adam Sedequi, | ) | C.A. No.: 2:25-CV-3492-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| Marco Rubio, Secretary of State, | ) | |
| Department of State, Agency, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Complaint and Jury Demand**

Plaintiff, Adam Sedequi, by his attorney, Bonnie Travaglio Hunt, complains against Defendant, Marco Rubio, Secretary of State, Department of State, Agency, as follows:

**Nature of the Action**

1. This is an action brought pursuant the laws of South Carolina.

2. This is an action brought pursuant the laws of the United States of America.

**Parties**

3. Plaintiff, Adam Sedequi, hereinafter referred to as the *Plaintiff*, was an individual who at all times relevant to this case was a resident of the of the State of South Carolina.

4. Plaintiff is informed and believes, and based thereon alleges, that Defendant, Department of State, herein refered to as the *Defendant*, is, and at all times relevant herein were, Entity operating in the State of South Carolina. The Defendant is subject to the laws of this Court pursuant to State and Federal Law.

5. At all relevant times, the Plaintiff was an employee of Defendant.

1

## Jurisdiction and Venue

6. This Court has jurisdiction over this matter pursuant to South Carolina Law.

7. The Charleston Division is the proper venue for this action because this is the Circuit in which the Plaintiff resided and in which a substantial part of the events or omissions giving rise to the claims occurred.

## Procedural Prerequisites

8. On June 4, 2020, the Plaintiff filed his Formal Complaint of Discrimination with the U.S. Department of State Office of Civil Rights (S/OCR).

9. The Plaintiff's Formal Complaint alleged Disability (Mental) Discrimination, Reprisal (Opposing Discriminatory Policies and Practices: Failure to Accommodate, Other: Hostile Work Environment.

10. The Plaintiff presented the EEO with an extensive timeline that set forth the discrimination, harassment and reprisal suffered.

*25.  Explain Specifically how you were discriminated against (treated differently from other employees or applicants) because of your race, color, national origin, sex, religion, age, physical, or mental disability, protected genetic information, sexual orientation, or reprisal for prior EEO activity or opposition to illegal discrimination.*

*TIMELINE OF EVENTS*

*9/9/2019      Confirmed Year-Round Excepted Service Appointment to the Bureau of Consular Affairs, Charleston Passport Center (CA/PPT/CPC) located at 1269 Holland Street, Building D, Charleston SC 29405, U.S. Department of State as a GS-0999-05 Step 1 Student Trainee (Passport).*

*9/15/2019     Appointment was effective*

*1/22/2020     Medical Questionnaire for Assessment of Disability/Reasonable Accommodation submitted by Adam Sedegui*

> 2/7/2020    Dr. Valerie Maxwell completed Accommodation Request
>
> 4/6/2020    Letter from EEOC Office of Federal Operations-Processing Information for All Parties in Federal EEO Processing under 29 CFR Part 1614
>
> 5/6/2020    Terminated from employment
>
> 5/6/2020    Filed with the EEO
>
> During Mr. Sedegui's employment he requested accommodation on several occasions to have more time to complete work to accommodate his disability. Mr. Sedegui realized that the Agency would not accommodate his requests. Mr. Sedegui then started the process to request accommodation. The accommodation was submitted to his employer who immediately than terminated his employment.
>
> The failure of the Agency to accommodate Mr. Sedegui's request led to a hostile work environment that was severe and pervasive.
>
> Mr. Sedegui has no prior EEO activity. Mr. Sedegui did protest the failure to accommodate during his employment prior to his termination.

11. On July 16, 2020, the Department of State, Office of Civil Rights issued a letter of Accepted Allegations: "*Because of your disability and as acts of reprisal, you were discriminated against when 1. You were denied an effective reasonable accommodation; 2. On May 6, 2020, you were terminated from your position, and 3. You were subjected to a hostile work environment characterized by, but not limited to yelling and intimidating behaviors.*"

12. On January 28, 2021, the Plaintiff properly filed a request for a hearing with the EEOC. The matters were assigned for a hearing.

13. The EEOC Office of Federal Operations issued a Final Agency Decision on March 11, 2025.

14. The Final Agency Decision set forth to the Plaintiff: "You have a right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision.

15. The Plaintiff hereby files prior to the experation of the 90 days.

### Factual Background

16. On September 9, 2019, the Plaintiff received his formal Year-Round Excepted Service appointment to the Bureau of Consular Affairs, Charleston Passport Center (CA/PPT/CPC) located at 1269 Holland Street, Building D Charleston SC 29405, U.S. Department of State as a GS-0999-05 step Student Trainee (Passport), with a salary of $33,949.00 per annum (locality pay included). This appointment becomes effective Sunday September 15, 2019.  The Letter received by the Plaintiff specifically included "Pathways Internship Experience Program Participant Agreement."

17. The Plaintiff was supervised by Catherine Prince, Group Supervisor.

18. The Plaintiff's position required the following:  Determining citizenship, identity, and entitlement to a U.S. passport.

19. In November of 2019, the Plaintiff requested a reasonable accommodation verbally to Prince.  During each of these verbal requests, the Plaintiff specifically stated that he was requesting more time to complete his tasks due to his disability.

20. While employed the Plaintiff realized that the amount of work as a trainee was too much and notified the Agency of his disability. According to Agency policy "employees can request reasonable accommodations by emailing DRAD at reasonableraccommodation@state.gov, calling our office, or emailing any of the OAA staff.  Supervisors can also request for reasonable accommodations on the employee's

behalf." (DRAD or Disability and Reasonable Accommodation Division provides reasonable accommodations.)

21. The Plaintiff suffers from a Learning Disability, Over-Focused ADHD(Attention Deficient Hyperactivity Disorder (ADHD) and general anxiety. The Plaintiff made Prince and Beverley aware of his condition in December of 2019. The Plaintiff provided medical documentation of his disability and reasonable accommodation request.

22. The Plaintiff requested a reasonable accommodation of extra time and support.

23. The Plaintiff's direct supervisors, Prince and Beverley refused to provide either or accommodate the Plaintiff.

24. When the Plaintiff realized that Prince was not going to accommodate his verbal requests, he decided to pursue the formal process.

25. In January 2020, Prince called the Plaintiff into the conference room and berated, yelled, screamed and smacked the table at him informing the Plaintiff that he needed to improve his work. The Plaintiff again informed Prince of his disability and requested extra time to perform his duties due to his disability. Prince refused.

26. On January 16, 2020, Catherine Prince, the Plaintiff's supervisor emailed DRAD on Plaintiff's behalf, about requesting reasonable accommodations.

27. On January 16, 2020, the same day that Catherine Price submitted the reasonable request for accommodation for the Plaintiff she drafted an evaluation of probationary employee stating that she recommended against retention allegedly documenting performance issues since September 2019. However, there is no documentation regarding any of the issues from September 2019 to January 2020.

28. Again, in February 2020, Prince called the Plaintiff into the conference room screaming and yelling at him to improve his performance. The Plaintiff again informed Prince that if the management would grant his requested accommodation this his work would be improved even more than it already had.

29. The Department of State Medical Bureau approved the Plaintiff's disability on February 11, 2020 but failed to provide a reasonable accommodation.

30. On February 7, 2020, the Plaintiff provided medical documentation of his disability to the Agency.

31. On February 11, 2020, the Plaintiff was approved for reasonable accommodation by the Bureau of Medical Services.

32. In March 2020, Prince again called the Plaintiff into a room, yelling and screaming at him about his performance. Plaintiff again told Prince that his performance had improved and if they would grant his reasonable accommodation his work would have improved more so. As a result of that request, Prince yelled at the Plaintiff that she did not know the status of his request.

33. On March 6, 2020, Christopher Brown sent an email to Catherine Prince stating the following: "Good Morning-I'm Christopher Brown, a policy analyst with the Office of Accessibility & Accommodation's Disability & Reasonable Accommodation Division (GTM/OAA/DRAD) under the Department of State's Bureau of Global Talent Management. I have been assigned to manage Mr. Sedequi's reasonable accommodation request he submitted to our office on 1/16/2020. In the Department's reasonable accommodation policy- under **3 FAM 3670- Reasonable Accommodations** for **Individuals with Disabilities** - it explains that the interactive process requires our office to communicate

with the individual's supervisor in identifying possible accommodations that will enable the individual to perform the essential functions of the position with or without accommodations. Please see paragraphs (f) & (g) under **3 FAM 3673,4** - **Interactive Process** in the attached link-http://fam.a.state.gov/fam/03fam/03fam3670.html. The Bureau of Medical Services (MED) has reviewed Mr. Sedegui' medical documentation and confirmed on 2/11/20 that he qualifies as an individual with a disability to receive accommodations from our office. On his accommodation request form, he requested for the following accommodation:

    **Additional** Time - in processing passport applications

"I am assuming he is a new passport specialist and knowing that specialists are required to complete a specific number of applications per minute, I am not sure how much additional time is permitted for him to support him in meeting his production quotas. Since DRAD is obligated to provide reasonable accommodations to employees with disabilities within 30 working days under our reasonable accommodation guidelines, we would need your response as soon as possible to discuss his request."

34. On March 6, 2020, Catherine Price responded to Brown's email with the following: "Good evening. Mr. Brown, Our understanding is that HRD's ER team has discussed this in the past and the production requirement of the position cannot be reduced from what we have been told. **The Performance Standard (production) is an essential function of the passport specialist position and is not an appropriate accommodation based upon guidance. Should you need additional information, please contact: CAEmployeeRelations@state.gov.** Additionally, **Mr. Sedegui is still in the initial training stage for a passport specialist and will not be on**

7

  **measurable production for at least another two months.** However, he continues to struggle with retaining information and both his supervisor and mentor discuss the same guidance repeatedly.  Also, Jeffrey D. Smith is Mr. Sedegui's Adjudication Manager, not Kirk Boutin. Mr. Smith has been copied on this email, since he was not copied on your initial email.

35. On March 10, 2020, Christopher Brown sent an email to Catherine Prince stating "Good Morning-I am aware about the production requirement for passport specialists and the DRAD accommodation process requires notification to management about the employee's accommodation request.  Just to clarify, are you saying that his performance won't be measured until two months later, correct?  If so, when do you have any information or suggestions that you can share with us while we explore accommodations to support him?"

36. On March 12, 2020, Prince responded to Mr. Brown's email with the following: Hi Mr. Brown, Based on the Passport Specialist New Hire Training Program, Adam is required to be on measurable production in his eighth month (April). **As with** any new employee we have provided Adam a mentor who works with the supervisor to guide Adam and to help him to be a productive passport specialist. We have assigned him coursework through FSI (including time management courses) to help him grow as an employee and to work more efficiently. At this time we do not have any additional suggestions beyond the fulsome training ahd mentoring he is already receiving by the nature of his new hire status. Technically, Adam is still in the initial training phase (based on the training continuum designed by Passport Services) and employees can become measurable after the sixth month {February) but must be measurable at the eighth month

(April). During this initial phase, the supervisor and mentor provide a 100% review of his work and feedback of errors found. He is encouraged (and expected) to use the initial phase to develop his knowledge and more importantly to increase his processing rate so when he does become measurable, he will be at (or at least very close) to the performance standard for his grade level, which at his current grade level is 12·14 DS11passport applications per hour. Specialists also have accuracy rates in five categories with the rates for his current grade level are as follows: Knowledge {98.5%), Fraud (99.95%), Procedural/Notational (94%), Data (97%), and Suspense (9go,6). Again, the specialist is encouraged (and expected) to increase his accuracy in processing applications."

37. In March 2020, a stay-at-home order was issued due to the COVID-19 crisis.

38. On April 6, 2020, The EEOC issued a letter stating that the office was processing all information regarding the Plaintiff's disability.

39. On May 6, 2020, the Plaintiff was notified that his appointment was terminated COB Friday May 9, 2020. The termination letter states that there were multiple instances of misconduct. However, the Plaintiff was not giving any written warnings or Performance Improvement Plans.

40. The Plaintiff's position was advertised on USA job website prior to his termination.

41. Prince was aware of all Plaintiff's requests for accommodation as she was copied on all emails.

42. On a daily basis, Prince would pressure the Plaintiff to work faster despite being aware of his disability. Specifically, she would relentlessly tell him "Come on let's go," and

when the Plaintiff would not respond appropriately she would take him into a separate room and scream at him for 30 minutes.

43. On June 16, 2020, Christopher Brown contacted Charleston Office to follow up on the accommodation request and was informed that the Plaintiff was terminated from his employment.

44. The Agency bases it failure to accommodate the Plaintiff on the evaluation process. That the Plaintiff was required to adjudicate 12 applications per day. However, this number is arbitrary and was never given to the Plaintiff as the requirements of his position because he was still a trainee. The Agency further has failed to present the requirements of a trainee which is what the Plaintiff was.

45. The Plaintiff's supervisor failed to accommodate the Plaintiff.

46. The Agency allowed the Plaintiff to be harassed in the workplace by an out-of-control manager when they clearly had notice of her behavior as it was witnessed by others on several occasions.

47. When the Plaintiff was approved as an individual with a qualified disability, the Agency failed to engage in the interactive process to find a reasonable accommodation for the Plaintiff.

48. The Agency failed and refused to protect the Plaintiff from a hostile work environment.

49. The Agency failed to document any and all issues regarding performance with the Plaintiff. However, they now want to use the alleged failure to perform as a pretextual reason to terminate his employment.

50. The Agency is liable for these actions because of their failure to follow the law.

51. The Plaintiff reported each incident to the Agency and properly filed complaints and the Defendant failed and refused to address the concerns of the Plaintiff.

52. That the Defendant failed and refused to address the Plaintiff's requests for reasonable accommodation.

53. The Defendant treated non-disabled individuals more favorably than the Plaintiff.

54. The Defendant discriminated against the Plaintiff based on his disability.

55. That the Plaintiff was subjected to a hostile work environment as a result of his perceived and or actual disability.

56. That the Plaintiff was subjected to harassment and a hostile work environment on the basis of her perceived disability.

57. That the Plaintiff was treated rudely, unprofessionally, harassed and abused by Administration.

58. The Plaintiff was assaulted by students on a regular basis. By the students throwing things or actually touching the Plaintiff with violent intentions.

59. That the Defendant failed and refused protect the Plaintiff from harassment and abuse from her students and adminstration in an effort to affect the Plaintiff's employment.

60. That the failure was for pretextual reasons.

61. That the Defendant directly violated its own policies regarding the Plaintiff by failing to protect the Plaintiff from discrimination and students.

62. That the Plaintiff had a record of disability, as defined under the ADA/Rehabilitation Act.

63. That the Defendant treated the Plaintiff disparately differently than it treated similarly situation non-disabled employees.

64. That each of the Defendant's actions were based on consideration of the Plaintiff's disability, the Defendant's perception of the Plaintiff's Disability or in consideration of the Plaintiff's record of disability, the Defendant violated 42 U.S.C. 12001, et seq. the ADA/Rehabilitation Act.

65. That the Defendant unlawfully discriminated against the Plaintiff because of her disability.

66. That as a direct result of the Defendant's violation of the ADA/Rehabilitation Act the Plaintiff has suffered;

    a.  Economic Damages;

    b.  Economic Damages;

    f.  Anxiety humiliation and emotional daamges.

67. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to the ADA/Rehabilitation Act.

68. That the Defendant took adverse employment action against the Plaintiff by:

    a.  Failing and refusing to protect her from discrimination;

    b.  Subjecting the Plaintiff to continuing harassment and hostile work environment; and

    c.    failing to protect the Plaintiff from abusive and violent students

69. That the Defendant created a hostile work environment because the Plaintiff was protected by ADA/REHABILITATION ACT.

70. That as a direct, proximate result of the actions of the Defendant, the Plaintiff is entitled to actual, consequential, punitive damages, attorney's fees and costs, costs associated with this litigation and any other damages as this Honorable Court sees fit.

71. That the Plaintiff was abused and harassed as a result of her national origin.

72. That the Defendant violated ADA/Rehabilitation Act by harassing and discriminating against the Plaintiff because of her national origin.

73. That the Defendant is the direct and proximate cause of significant damage to the Plaintiff by violating ADA.

## FOR A FIRST CAUSE OF ACTION

## DISABILITY DISCRIMINATION

## IN VIOLATION OF THE

## AMERICANS WITH DISABITIES ACT/REHABILITATION ACT

74. That Paragraphs one(1) through seventy-three (73) are hereby incorporated verbatim.

75. The Defendant is an employer as defined in ADA.

76. That the Plaintiff is an employee as defined by the ADA.

77. That the Plaintiff was considered an exemplary employee.

78. That while she has been employed with the Defendant, the Plaintiff has been able and has performed his job duties in a satisfactorily level of the Defendant.

79. That the Defendant considered the Plaintiff's disability or perceived disability when considering any and all employment decisions.

80. That the Defendant failed and refused to reasonably accommodate the Plaintiff when requested.

81. That the Plaintiff requested a reasonable accommodation.

82. That the Defendant discriminated against the Plaintiff based on his disability, record of disability, and or perceived disability.

83. That the Defendant is the proximate and direct cause of damage to the Plaintiff.

84. That the Plaintiff has suffered severe emotional damages as a result of the Defendant's discrimination against the Plaintiff.

85. That the Plaintiff was denied the position based on consideration of her disability, the Defendant's perception of the Plaintiff's disability, or in consideration of the Plaintiff's disability, the Defendant violated the ADA/Rehabilitation Act.

86. That as a direct result of the Defendant's violation of ADA/Rehabilitation ACt the Plaintiff has suffered:

    a. Considerable damage to her reputation;

    b. Economic damages;

    c. Economic hardship;

    d. Lost wages;

    e. Suffered anxiety, humiliation and emotional damages.

87. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs

of this action and all other damages available pursuant to the ADA for the Defendant's discrimination against the Plaintiff based on his disability.

## FOR A SECOND CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT AND RETALIATION/REPRISAL

## BASED ON DISABILITY

88. Paragraphs one (1) through eighty-seven(87) are hereby incorporated verbatim.

89. That the Plaintiff was an employee of the Defendant.

90. That the Defendant is an employer in accordance with ADA/Rehabilitation Act.

91. That the Defendant subjected the Plaintiff to a hostile work envrionment.

92. The Plaintiff made complaints regarding the discrimination and hostile work environment.

93. That the Plaintiff complained about not being accommodated, complained about the hostile work environment and was terminated for his complaints.

94. The termination was reprisal for his complaints regarding discrimination, hostile work enviornment and unwaranted discipline

95. That as a result of the complaints, requests for accommodation and discrimination the Plaintiff was retaliated against with more hostility, discipline and termination.

96. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

97. That the Plaintiff suffered severe emotional distress as a result of the Defendants hostile work environment based on the Plaintiff's actual or perceived disability and her national origin.

98. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

99. That the Plaintiff has been damaged as a result of the Defendant's work environment and Retalaition.

100. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

101. That the Plaintiff is entitled to actual, compensatory, consequential and punitive damages from the Defendant as a result of the hostile work environment.

**WHEREFORE**, the Plaintiff respectfully requests the following relief:

Entry of judgment in favor of the Plaintiff and against Defendant;

1. Economic Damages;
2. Future Economic damages;
3. Lost Wages;
4. Future Lost Wages;
5. Lost Benefits;
6. Future Lost Benefits;
7. Compensatory and consequential damages;
8. Punitive damages;
9. All damages available pursuant to ADA/Rehabilitation Act;
10. Attorneys fees and costs; and
11. Other such relief as may be appropriate to effectuate the purposes of South Carolina Law;
12. All other damages as are available under Federal Law; and
13. All other damages as this Honorable court sees fit.

                Hunt Law LLC

                *s/Bonnie Travaglio Hunt*
                Bonnie Travaglio Hunt

                                        ATTORNEY FOR THE PLAINTIFF
                                        Post Office Box 1845
                                        Goose Creek, SC 29445
                                        (843)554-6363
                                        Facsimile (843)554-6366
                                        bthunt@huntlawllc.com

Date: April 25, 2025